Good morning, your honors. Marissa Darcy, federal defenders on behalf of Mr. Vidrio-Osuna. Your honors, the district court erred in this case by failing to dismiss the indictment. Mr. Vidrio was deprived of his opportunity to seek 212C relief. Now, in our briefs, we initially argue that under Mendoza-Lopez This is a sincere problem.  But you have to overcome harmless error, prejudice. You have to show that he would have, in fact, gotten the relief. Plausible case, yeah. That's correct. In our brief, initially, we do make the argument, and not conceding that today, that under Pro Etovar and Mendoza-Lopez, prejudice is simply the right to, or the deprivation of the right to judicial review. Now, I'll just simply go right into addressing prejudice. The government, at the district court level, argued that the higher standard of unusual or outstanding equity should have applied to Mr. Vidrio's case. Now, regardless of which standard would have applied. Well, isn't that standard unusual or outstanding equities under Ayala-Chavez? That's under Ayala-Chavez, which actually was a case, an immigration case in which the individual appealed to the Ninth Circuit. This court has never directly held in the context of a collateral attack on a deportation that that standard should, in fact, apply. Now, it has to, doesn't it? If we're trying to figure out prejudice, again, I understand you have several arguments that we don't need to consider prejudice. But if we are sort of in prejudice land, we have to figure out what actually would have happened on the ground if the claim had been properly litigated. And if that's the case, we look to our immigration cases to see what standard would have applied in that context. And we have Ninth Circuit case law that tells us what would have happened in that context. He would have had to show these extraordinary equities. So I don't see how that body of case law doesn't apply to the situation directly. Well, first of all, in Gonzales, it's our position that that is, in fact, dicta. Now, after Gonzales Valerio, this court in Ubaldo, Figueroa, found that Mr. Ubaldo did show plausible grounds for relief and did not apply the unusual or outstanding equity standard. Arguably, Mr. Ubaldo, who had a prior conviction for attempted robbery, I believe two disorderly conduct convictions, as well as a DUI, arguably had engaged in a pattern of criminal history, and this court did not then apply the unusual or outstanding equity standard. Again, in another case ---- We didn't have any direct convictions. But the standard of unusual or outstanding equities arguably applies in either the case of a serious drug offense or a case where a person has a pattern of criminal history. Your client has a drug trafficking conviction. Is that right? No, it's not. What was it? Well, he was convicted of 11-351, but we are arguing that essentially that is not an aggravated felony nor a drug trafficking conviction. What was he convicted of?  It's a felony. It's a felony. And he had three drunk driving convictions. Is that right, too? That's correct. But the 51 means that he had possession for sale. Correct? Well, arguably, it could have involved solicitation, and those facts were never presented to the district court. Well, either solicitation or possession for sale doesn't sound like user. It sounds like trafficker. Well, you could possess or you could purchase for sale, which could arguably involve solicitation, the purchasing of a controlled substance for sale. More fundamentally, aren't all felony convictions under California law, right? That's correct. Aren't all felony convictions under California law somehow trafficking-related? All possession is misdemeanor, as I understand it. There is no misdemeanor possession crime in California. It has to be possession with intent to distribute. There's possession in a solicitation, maintaining a place of where, you know, something involving more than simple possession. So isn't the very fact that it was a felony, doesn't that make it trafficking-related? Well, essentially, it could possibly be, but that's the problem. It's not facially one. You need to go through the category. That's what I'm asking. I thought my understanding of California law is that if you have something that's simple possession, it has to be a misdemeanor. Everything that's a felony is facially something else, something that's possession plus something related to trafficking. That's correct. Maybe I'm wrong. Well, for example, Health and Safety Code 11-360 could be an aggravated felony. It might not be an aggravated felony. It might be an ordinary felony. I'm sorry? It might be an ordinary felony. It would be an ordinary felony, but whether it's an aggravated felony and a drug trafficking offense is another question, in which the government has to present evidence and go through, the court has to engage in a Taylor analysis and go through and see if the underlying facts of that case rose to what constitutes a drug trafficking offense or an aggravated felony. And here he was convicted of 51, right? That's correct. Come again. What is the definition of that? It's possession or purchase for sale of a controlled substance. You know, it's got those two words that are really damaging to your client, for sale. But also purchase for sale. And under the California courts, I believe it was Armstrong, and that's in our brief, basically stated that that could encompass solicitation. Solicitation for what? Solicitation to commit an offense. What offense? The sale of a controlled substance. So you back right into sale, no matter how you cut it. Correct. What about the three convictions for driving under the influence? Is there any way you can degrade those? Well, that would not have barred him from 212C relief. But that's on the record. He had four United States citizen children, but as far as I can tell, he was not living with them. Am I right? He was at one point in time. Was he living with them at the time of the deportation? At the time of the deportation, no, obviously. Is there any affidavit in the record from any of these people saying that his absence from the scene would constitute any kind of a hardship at all? Well, I believe the declaration from both his mother and father state that every summer. What about the wife and the children? Anything from them? No. But I think the problem is here. We're being asked to recreate something eight years later, and obviously the wife and the children probably weren't happy about Mr. Vidrio's deportation. Did he have any income for two years up until the deportation? He was incarcerated at that time, and that's what led to his deportation. So what's the plausible case? Well, there's a number of factors. First of all, he had a residency of 25 years, and in a matter of Edwards, the court stated that when someone comes here at a very young age and has lengthy residency, that can rise to the level of an unusual or outstanding equity. That's factor one, 25 years. Factor two? Factor number two, he worked at the Claration Renewal Center, and there's a letter in the record basically working to bring gang violence to an end. So he had community involvement. He also was a member of the Soledad Community Church. His entire family resided in the United States, and the declarations were submitted to the court. He had three children at the time after deportation, a fourth child, all of which were United States citizens. The immigration court in Catalina, Aragon found that her two minor children and her lengthy residency of 22 years were, in fact, enough to give her 212C relief. So all of these factors combined, that rises to the level of a plausible showing. Now, the government never in their brief showed any evidence that an immigration judge would not have granted relief or any statistical evidence that Mr. Vidrio might not have plausibly been granted relief. All it is is plausible, not whether he actually would have been granted relief, and there's more than enough facts in the record to show that he did have plausible grounds. One other thing I would point out in terms of whether this standard would even apply is we talk about the drug offense, and it does require a serious drug offense, a finding that was never made by the district court nor argued by the government. Basically, in the United States, in El Remy, an individual was convicted of delivering $100 worth of hashish, arguably a drug trafficking offense, and the court there found that in that case, the unusual or outstanding equity standard didn't apply. So with all of that, we would ask the court to reverse the conviction. Thank you. Good morning, Your Honors. May it please the Court, Mark Rahe for the United States. Your Honor, the district court correctly applied the unusual or outstanding equity standard in this case. Not only did this court indicate that that was the correct standard in the Gonzales-Valerio case, it also did in the Ayala-Chavez case. And even if it is somewhat of a difficult exercise for the district court to put itself in the position of an I.G. at the deportation hearing, it happens all the time in our district, and it would just not be, it wouldn't make sense at all to ignore the controlling standard. What we are saying is the standard is a plausible grounds for relief, but it has to be read in conjunction with this higher standard. And it sounds to me, from what I heard in the last questioning, the court understands that, and there is more than one hook to get this heightened standard. The drug trafficking conviction, I note that the defense counsel almost implies sort of a Taylor categorical approach to this. I don't know that that's necessarily the law. When the BIA looks to what standard to apply in 212C, the language of the courts is, this standard is independently triggered by generally three ways. One, a drug trafficking conviction. Two, a particularly grave offense, such as murder or rape. And three, a pattern of criminal activity. And as we point out here, a two-year, a sentence in 1995 of two years in prison for 11351, which without a doubt involves commercial drug activity, is a serious conviction. But even aside from that, the three DUIs by themselves, obviously a serious crime. It goes to a threat against public safety, and that's not even all of it. In the 10 years leading up to this deportation hearing, this defendant had incurred, I believe, eight convictions, plus one juvenile adjudication. And that qualifies, I believe, by itself as a pattern. What do we have to find in order to affirm? I mean, we don't have to – I mean, the defendant doesn't have to prove that he would have gotten the relief. Correct. Right. He has to prove that he might have gotten the relief. So it is not enough to sort of put yourself in the shoes of an immigration judge or, you know, the district court puts itself in the shoes of an immigration judge and say, if I were an immigration judge, I wouldn't have done it. What the court has to do is to say, well, if I were an immigration judge, could I have done it? Could I have plausibly done it? Is there any way this could have happened? Is there any reasonable way this could have happened? And, you know, what you're arguing are pretty good facts, and I think chances are very good that an I.J. would not have granted the relief. But I have a hard time saying that it's utterly out of the question that an I.J. who granted such relief would have been highly unreasonable, reversed by the BIA. I mean, the guy was here since, what, 63 or something? 72 is when he came over. Sorry? 1972 is when he first came to the United States. He was here for 25 years. Was he in the 70s? I thought he was in the 60s. He was born in April 1967. He came over in 72. He was five. All right. Okay. So he came in 72. That's a long time. I mean, he lives here a long time. He has a wife. He has four children. His parents are here. And, you know, he's not a model citizen by any means, but I think chances are very good that I.J. would not have exercised discretion. But that's not the test, is it? Isn't the question, are we convinced to a moral certainty that I.J. would not have exercised discretion? Isn't that the test? I'll tell you, Your Honor, this is a very sort of elusive area of the law. The cases say time after time, plausible grounds. It's never really been given a specific definition. Defense, the only thing we do know is that you don't have to show that he actually would have got it. But we would submit that plausible cannot simply just mean can, because there's no doubt that this is discretionary relief. If the only test was could an I.J. do it, the defendants would win every single time. Because obviously if it's within their statutory power, if you meet the basic criteria of seven years of unrelinquished domicile as a lawful permanent resident, you're supposed to at least get a chance. But what we do. They're not arguing can, they're arguing could. They're saying we're not saying that nearly the most permissible, but that a non-crazy, non-drunk, you know, a sober and sane immigration judge could have come up with this decision. You know, nobody would be shocked by that. And I might not have any trouble saying that's the case. I mean, you know, I've seen immigration judges do a lot of shocking things. Various things. Some of them, some of them surprising, more surprising than others. And I've seen district judges do surprising things. And I would not, you know, if I had this case and if I had learned that on these facts an immigration judge had granted relief, I would say, well, no, immigration judge was there, looked at the evidence, looked at the circumstances, looked at the family, looked at, you know, and sounds okay to me. Maybe not what I would do, but, you know. Well, I'll tell you. That's, you know, I'm not an immigration judge. How do Gonzalez Valerio and Ayala Chavez work together? You have to show a plausible ground for relief, but then you have this heightened standard. How does that dovetail? Right. I don't believe they're inconsistent. You basically have to make a plausible showing of special equities. It can't just be run-of-the-mill conclusory statements and affidavits like we have here from the parents, the sister. We miss Aurelio. He showed up at family gatherings. We were a close family. I mean, what we did, you know, I broke all these factors down. When you look at these 212C cases, and this goes to Judge Kaczynski's point, this is not a case. I don't think this one would even be close because if you look at all the operative rules of law, when you look at these factors, let's talk about the 25-year residency. In matter of Bourbono, the 20 immigration and nationality decision at 875, the BIA specifically said even a long residence will not rise to the level of unusual or outstanding equity if it is marked by criminal activity. That's what you have here. Yes, he was here 25 years, but he had a criminal record going back 10 years. That is a principle of law. It's not just something that's left open to the IJ. The IJs have to follow BIA precedent. That instructs them that a long residency does not, it loses its status as an unusual or outstanding equity. Another thing that was cited by the defense counsel, the community service. Yes, that's a factor you look at, but as the district court found, at the same time he was engaging that community service, he's still committing crimes. In fact, I believe that community service was from 1980 to 1990. Starting in 1990, he gets worse. I mean, this is all good stuff for you, but essentially what you're trying to prove, I think, is that no sane and sober immigration judge, I mean, no immigration judge in his right mind would grant relief to this guy, would grant relief to this guy. That's your burden. It is. It's a pretty high burden. I mean, you know, it's a pretty high burden because you're trying to prove a negative. True. Among the universe of rational people, and as we know from experience, rational people often disagree on some of the most fundamental things. You know, people we respect, people we admire. You know that I certainly admire Judge Posner, but I read some of his immigration opinions, and I think I have no idea what he's talking about. So, you know, stuff like that happens. So if we take seriously the standard that, you know, do we believe that some immigration judge within their own possibility could have granted relief here, I think it becomes very hard to say that the answer to that is no. All you are showing is that most immigration judges wouldn't. Right. But I believe most is not good enough for you. You have to show none would. See, I would respectfully disagree with that, Your Honor, and we're not going in a vacuum here. Look at Gonzales Valerio. That defendant, 16 years residence, that defendant had a daughter he supported. If those facts in and of themselves were enough, he should have gone. The problem, you know, and I think this may be a Super Bowl problem, is that we don't get the cases where relief is granted. They never make their way into the judicial system. We have to sort of guess about them from other factors, from things the BIA says. But if somebody gets relief, you and I never see them. We never see those cases. They are exercise, discussions, exercise, and they go away. And I would say yes and no, because look at defense counsel in this case. They relied on two published BIA cases where relief was granted. We distinguished them in a footnote. One of them, the woman had only one conviction in 20 years. That could not be more different than this case. And in that situation, I don't see why this Court has to then just say, well, simply because it's in the realm of possibility, he shows prejudice. I believe it was either the Edwards case. There was another one where they tried to compare themselves. That person had an autistic child with very special needs. This case, I mean, it's pretty much all we can do, Your Honors, to look at these equities. I think it's unfortunate to say the least. Undocumented aliens committing crimes. As soon as the deportation comes up, oh, look, I have three children, three children where during their formative years of development, he's in and out of prison, where he has a heroin habit, where the defense counsel was given three months to get testimony. They lived in Los Angeles only two hours away. Defense counsel promised that testimony. It never came to light. In this case, even if we don't know exactly what plausible grounds mean, it can't be that. It's not easy being a defense attorney. One day you may be one. And you may find out. Witnesses are not always there. You can't send the FBI out to pick them up. Gonzales Valerio seems to suggest, and I use the language that we use there, that a person in this person's position has to show that it's not highly unlikely that he would have gotten this kind of relief. While Gonzales has major adverse factors stemming from his multiple convictions and the nature of his offenses, his favorable evidence was minimal and not outstanding. He provided only his own declaration stating that he lived in the United States for 16 years, that his family lives here, and that he is attached to them. And they say this is just overcome by a pattern of criminal behavior. And if I in ten seconds could beg the Court's indulgence, this defendant. It's highly unlikely that you can satisfy this burden. I guess you're out. I believe they would be out because, remember, the burden of proof of prejudice is theirs. And the BIA says proof of rehabilitation ordinarily required before we give 212C. Here, no rehabilitation up until the time of the removal hearing. Why is it their proof of prejudice? It's the government that goofed. The I.J. misread the law and misinformed the defendant. So it's the government's goof. Why isn't the government's burden to show absence of prejudice? Because this Court held, sitting on Bonk and Pro Atovar in 1992, that it was the defendant's burden. And this Court has repeatedly reaffirmed that rule. I think maybe it has something to do with the fact, you know, you have these cases, deportation hearing in 1996. Defendants engage in self-help. This one here fell through the cracks. Seven years later, they suddenly throw up their hands. Oh, there were errors at my deportation hearing. Well, it's like in all things. Trials aren't perfect. Harmless error. They can't. They shouldn't be able to live that long. No, it was fewer than there were errors. But you're trying to undo the deportation proceeding. It should have been done then, not now. That's a pretty – The cases say if you want to do this, it's your burden to show prejudice. Exactly. I think that's my theory on why there's that compromise. They would have had to predict Saint Seiya, you know. They would have had to predict whether the Supreme Court was holding Saint Seiya. That – well, that's true, too. I think it's a lot to ask of people who are being deported. I don't think I could have predicted Saint Seiya.  But I would say it's – Yeah, but you were never being deported, were you? Yeah. Harmless error. Here we go. That's the guy to stay token. It's very hard to ask an immigration judge. It's hard to ask an immigration judge to predict that, too. Yeah, you know, two of us have made it through the IMF. Yeah, yeah. Okay. Thank you. We go to the system team. Doing a rebuttal? Oh, you got a minute and ten seconds. Nine seconds, too. This Court stated that it's not actual relief. It's simply plausible grounds. I think the factors that have been laid out, the lengthy residency of 25 years since an early age – It's more than plausible grounds, isn't it, in this case? Isn't it the outstanding unusual equities on top of plausible ground, as Gonzales-Valerio says? Well, it's our position that standard doesn't apply. If this Court were to apply that standard – Why doesn't it apply? Well, in Gonzales, first of all, it's dicta. Secondly, there was never a finding that this was actually a drug trafficking offense. Yeah, I assume it applies. I'm sorry? I assume it applies. Even if it were to apply, it's simply plausible grounds, which we've shown with the residency, with the family in the United States, the three United States citizen children, community involvement with the church and with a community center. All of those factors in itself do rise to plausible grounds. Thank you. Thank you very much. The case is signed.
judges: Kozinski, Trott, Bea